SCHWARTZ & BENJAMIN, INC., Plaintiff, *v.* STEVE ALEXANDERSON, as President, etc., and Others, Defendants.*

Supreme Court, Kings County, March 14, 1930.

*Milton M. Eisenberg*, for the plaintiffs.

*J. Buitenkant*, for the defendants.

MAY, J. The facts and circumstances connected with and surrounding the refusal of Fierstein to remain in the plaintiff's factory

* See, also, 138 Misc. 917.

on the day in question was evidently part of a scheme to precipitate the situation which finally developed. The claim of Fierstein that at the time in question work was slack and there was no immediate need for his presence in the factory was evidently a subterfuge to justify the calling of the strike. That the result of Fierstein's action was as the plaintiff's witnesses testified is supported by all of the surrounding circumstances. After the plaintiff's employees had " walked out," they were induced by the leaders of the union to return and offer to resume work without the reinstatement of Fierstein. The calling of the strike was in violation of the agreement between the plaintiff and the union. It was necessary on the part of the union to avoid breaching its contract and to make it appear that it had done nothing to provoke said strike, but, on the contrary, to put the onus upon the plaintiff to establish that the latter was solely responsible for the discontinuance of relationship with its employees as members of the union.

The action of the plaintiff in refusing to re-engage its workmen without first procuring from them a statement as to whether or not they or any of them were Communists was justified. Prior to this time the plaintiff had received a communication from the Labor Department of the national government advising it against the employment of members of a communistic organization which had for its main purpose the undermining of the government. In this situation it was but right and proper that the plaintiff guard against taking any position which might reasonably be construed as encouraging the enemies of the government or of giving them moral support. The refusal of the employees to answer the question propounded by an officer of the plaintiff as to their connection with Communism would seem to indicate that either they were Communists or were influenced in their relation to the union by the Communists. While it is asserted that but few of the plaintiff's workmen were Communists, and that those selected to control them in the several branches of their work in the plaintiff's factory were elected by the plaintiff's workmen, it is undisputed that those who controlled and directed the union were Communists, as it is obvious that those selected to direct the employees in the plaintiff's factory could only be named at the instance of the Communist leaders.

It is unnecessary to dwell upon the purposes of the Communist party in this country. It is easy for such party to make pretense of being the friend of the workmen and of acting for them from altruistic purposes. That the Communist party has direct contact with, and is wholly influenced and governed by, the Soviet government of Russia has been satisfactorily established. Were it but

another political organization, imbued with the desire and having for its aim the improvement of the condition of the workmen, no exception to their conduct could reasonably be offered. But in the determination of this action I am concerned solely with what the facts are and whether the plaintiff has established a right to the remedy which it seeks here. Subsequent to the strike, some twenty-five or thirty people, at least many of whom were members of the union, paraded before the plaintiff's factory, singing foreign songs, carrying banners containing phrases which tended to incite, making threats and committing acts of violence, contrary to the spirit and letter of the rule laid down by our courts, permitting " peaceful " picketing.

The plaintiff having established the allegations of its complaint, judgment is directed in its favor as demanded therein.